# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6642 | **DATE** | 4/11/2003 |
| **CASE TITLE** | TERRY D'ANGELO vs. J & F STEEL CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: For the forgoing reasons, the Court grants defendant's motion for summary judgment [27-1,2]. The Court hereby terminates this case. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | APR 14 2003 | date docketed | |
| ✓ | Docketing to mail notices. | | | 37 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY D'ANGELO and LINDA V. PAPLAUSKI ) ) ) | |
| Plaintiffs, ) ) ) | Judge Ronald A. Guzman |
| | 01 C 6642 |
| v. ) ) ) | |
| J&F STEEL CORPORATION, a Delaware Corporation ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In this suit, brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law, 82 ILCS 105/1 *et seq.*, plaintiff Terry D'Angelo ("D'Angelo") has sued J&F Steel Corporation ("J&F"), a Delaware corporation, for alleged unpaid overtime wages. Presently before this Court is defendant's motion for summary judgment and/or partial summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons stated herein, defendant's motion for summary judgment is granted.

## FACTS

The following facts are undisputed, unless where noted. Plaintiff Terry D'Angelo was hired as a shipping clerk by J&F Steel in January of 1985. (*Pl.'s Ex. 1., D'Angelo Dep.*, at 6.) Until January 1, 2001, J&F Steel was incorporated in Illinois. (*Pl.'s Ex. 2., Thien Dep.*, at 1-3.) On January 1, 2001, J&F Steel switched its state of incorporation

1

from Illinois to Delaware. (*Id.*)

Plaintiff was referred to at J&F Steel as "shipping clerk" and "shipping manager." (*D'Angelo Dep.*, at 12.) Plaintiff received a regular salary, at regular intervals, and was paid more than $250 per week. (*Thien Dep.*, at 4.) Some of her duties at J&F Steel included answering telephones, typing, filing, time card preparation, preparing delivery shipments, and other office work. (*D'Angelo Dep.*, at 11-17.) Plaintiff was responsible for "getting the steel out the door to customers." (*Id.*)

Plaintiff's responsibilities revolved around shipping. (*Id.* at 13.) She prepared the necessary paperwork for steel delivery, looked up directions to shipping offices, and made arrangements for load pickups. (*Id.* at 9-14.) In her deposition, plaintiff stated that her responsibilities were to "prepare and get everything ready." (*Id.* at 13.) She stated that she was the "bottom rung" of the plant's functioning. (*Id.* at 130-131.) Plaintiff's normal work hours were between six or six-thirty a.m. to four or four-thirty p.m. (*Id.* at 19.) Plaintiff also asserts that she originally was paid overtime wages for these duties, but that that practice stopped either in late 1997 or early 1998. (*Id.* at 8.)

Plaintiff coordinated with J&F Steel's plant manager to ensure that steel delivery had been accomplished. (*Id.* at 18.) This process would involve determining where the steel was bound for and who was receiving it, calling the truck lines or customers in advance of shipments, and determining whether J&F trucks could be used to make the deliveries. (*Id.* at 20.) It was also necessary to coordinate with in-house drivers regarding the number of stops they had to make and the scheduled time for their pickups. (*Id.* at 21.) Plaintiff made calls to truck lines as part of her job as dispatcher. (*Id.* at 23.) On rare occasions, when the plant manager was absent, plaintiff would perform these

2

duties on her own. (*Id.* at 19-20.)

Plaintiff's job included making sure truckers received proper bills of lading for their shipping loads, and received proper directions on where to take those loads. (*Id.* at 19.) Any complaints by truckers would first go through plaintiff, and then she would consult with the plant manager. (*Id.*)

It was plaintiff's job to "sometimes" help solve any problems that truckers might encounter. (*Id.* at 23-24.) She was responsible for drawing up a dispatching schedule and regulating dispatching. (*Id.* at 28.) Plaintiff dealt with these responsibilities "all day." (*Id.* at 24.)

Plaintiff stated in her deposition that coordinating the dispatch function was the "core" of J&F Steel. (*Id.* at 27.) She also coordinated sales functions for the company. (*Id.* at 128.) Plaintiff was the only J&F Steel employee who coordinated dispatching on a full-time basis. (*Id.* at 30.) The Assistant Plant Manager had these responsibilities on a part-time basis, when plaintiff was sick or on vacation. (*Id.*) At no time did plaintiff engage in any manual or physical labor. (*Id.* at 32.)

It was plaintiff's responsibility to set a revised schedule to meet a customer's needs when that situation arose. (*Id.* at 33.) Plaintiff described this process in her deposition as the "heart of the operation." (*Id.* at 35.) It was also "sometimes" part of her responsibilities to coordinate with truck lines so that trucks could be used to both bring in and ship out material from the plant. (*Id.* at 37-38.) In the Plant Manager's absence, plaintiff would "remind" the Assistant Plant Manager of certain functions that needed to be performed, and "sales" would contact her directly with a "hot order." (*Id.* at 45-46.)

3

Plaintiff, in her role as Shipping Manager, reported directly to the Plant Manager. (*Id.* at 58.) In her deposition, plaintiff stated that she "was the core of the apple. If I didn't get the steel out, they didn't get paid." (*Id.* at 116.) Plaintiff never turned in a slip for alleged overtime hours at J&F Steel in 1999 or 2000; however, plaintiff asserts this is because she was told by managers that she would not receive overtime compensation. (*Id.* at 6, 16.)

Plaintiff contends that she was in training for the position of Quality Control Manager until the plant closed down. (*Id.* at 57, 64-65, 70.) Plaintiff had the title of Quality Control Manager, but still performed the Sipping Manager's duties on a part-time basis. (*Id.* at 57.) She was salaried at approximately $44,000 per year and, as Quality Control Manager, reported directly to the plant branch manager. (*Id.* at 61.) Plaintiff considered being made Quality Control Manager as a promotion. (*Id.*) As Quality Control Manager, plaintiff reported to the branch manager, who in turn reported to the J&F Steel president. (*Id.* at 81-82.) Quality control is part of the "core" of J&F Steel Corporation. (*Id.* at 95.) Additionally, as of January 1, 1998, plaintiff was never docked pay for taking days off due to illness or personal reasons. (*Id.* at 80.)

Plaintiff had the authority to write corrective actions against other employees at the plant. Other employees at the plant also had this authority. (*Id.* at 53-56.) She wrote corrective actions on more than one occasion. (*Id.* at 82-83.) The corrective actions covered verbal/sexual abuse, negligence, or absenteeism. (*Id.* at 103-104.) Plaintiff did not have the ability to hire or fire another employee. (*Id.* at 39.)

Plaintiff never belonged to a union, despite the fact that J&F Steel was a unionized company. (*Id.* at 84.) Plaintiff, in her deposition, referred to herself as a

4

"supervisory employee" and stated that she was regarded "as part of management." (*Id.* at 84-85.)

## **DISCUSSION**

Pursuant to Rule 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To determine whether a genuine issue of material fact exists, the court does not weigh the evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). The nonmoving party may not rest on his pleadings however, instead he must demonstrate through specific factual allegations that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Unless a reasonable jury could find for the nonmoving party, summary judgment must be granted. *Anderson*, 477 U.S. at 249.

The Fair Labor Standards Act

Plaintiff claims that J&F Steel owes her overtime wages and damages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. In response to this claim, defendant, J&F Steel, has asserted the affirmative defense that plaintiff was a salaried, exempt employee who is not entitled to overtime compensation under the FLSA.

The FLSA mandates that employers must pay their employees at minimum one and a half times their regular wages for any number of hours worked that exceed forty in

5

any given week. 29 U.S.C. § 207(a)(1). Employees, however, that work in "a bona fide executive, administrative, or professional capacity" are exempt from the overtime requirement. 29 U.S.C. § 213(a)(1). The authority to define and maintain the scope of these exemptions has been delegated by Congress to the Secretary of Labor. *Id.* The Secretary of Labor's regulations, then, have the "force and effect of law." *Cf. Batterton v. Francis,* 432 U.S. 416, 425 (1977). This Court may rely upon these regulations to the extent that they enhance the assessment of a case. *Shaw v. Prentice Hall Computer Publ'g, Inc.,* 151 F.3d 640, 642 (7th Cir. 1998).

The Secretary of Labor's "short test" is the appropriate method in this case to determine whether plaintiff was a salaried, exempt employee under the FLSA. The "short test" for administrative employees has three main prongs: (1) the employee must be paid on a salary basis, as defined in the regulations, (2) the employee's work must "include work requiring the exercise of discretion and independent judgment," and (3) the employee's primary duties must involve office or non-manual work "directly related to management policies or general business operations." 29 C.F.R. § 514.214; *see also Haywood v. North Am. Van Lines, Inc.,* F.3d 1066, 1069 (7th Cir. 1997). The employer bears the burden under this test to establish that an employee fits into this exemption. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97 (1974).

Under the first prong, an employee is paid on a salary basis if "under his employment agreement he regularly receives each pay period…a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or the quantity of the work performed." 29 C.F.R. § 541.118(a). It is undisputed by both plaintiff and defendant that D'Angelo received a

regular salary of more than $250 per week. (*Thien Dep.*, at 4.) Thus, the first prong has been satisfied.

Under the second prong, the employee must exercise discretion and independent judgment. The relevant regulations state that discretion and independent judgment depend upon the:

> "comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered....(it) implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." 29 C.F.R. § 541.207.

The discretion and independent judgment must also be "real and substantial, that is, they must be exercised with respect to matters of consequence." 29 C.F.R. § 541.207(d)(1). Independent judgment, however, does not need to be made in isolation. *Piscione v. Earnst and Young, LLP*, 171 F.3d 527, 535 (7th Cir. 1999), quoting *Dymond v. United States Postal Serv.*, 670 F.2d 93, 96 (8th Cir. 1982). As was noted:

> "Even though an employee's work is subject to approval, even to the extent that a decision may be reversed by higher level management, it does not follow that the work did not require the exercise of discretion and independent judgment as the terms are defined for the administrative employee exemption." *Id.*

In *Piscione v. Earnst and Young, LLP*, the Court of Appeals for the Seventh Circuit held that an employee who worked at improving client services, communicated with clients, attempted to solve or fix problems for clients, made recommendations to clients, and served as a contact for clients was an exempt administrative employee under

7

the FLSA. *Piscione,* 171 F.3d at 540. The Court of Appeals for the Seventh Circuit reasoned that this employee evaluated possible courses of conduct for his company, and the fact that he had to consult with his supervisors on these matters did not negate the reality that he exercised discretion and independent judgment. *Id.* at 537.

In *Demos v. City of Indianapolis,* the Court of Appeals for the Seventh Circuit held that an employee who served as a go-between his supervisors and other employees, represented the Parks Department in dealing with the public, and made recommendations concerning asset allocution was an exempt administrative employee under the FLSA. *Demos v. City of Indianapolis,* 302 F.3d 698, 704 (7th Cir. 2002).

In the present case, plaintiff's deposition indicates that she prepared delivery shipments and did other office work. (*D'Angelo Dep.*, at 11-17.) She was responsible for "getting the steel out the door to customers." (*Id.*) Plaintiff made arrangements for load pickups and stated that her responsibilities were to "prepare and get everything ready." (*Id.* at 9-14.) Plaintiff coordinated with J&F Steel's plant manager to ensure that steel delivery had been accomplished. (*Id.* at 18.) This process involved determining where the steel was bound for and who was receiving it, calling the truck lines or customers in advance of shipments, and determining whether J&F trucks could be used to make the deliveries. (*Id.* at 20.) It was also necessary for plaintiff to coordinate with in-house drivers regarding the number of stops they had to make and the scheduled time for their pickups. (*Id.* at 21.) Plaintiff made calls to truck lines as part of her job as dispatcher. (*Id.* at 23.) She would also perform these duties on her own on the rare occasions when the plant manager was absent. (*Id.* at 19-20.)

Plaintiff consulted with the plant manager when complaints would come to her.

(*Id.* at 19.) It was plaintiff's job to "sometimes" help solve any problems that truckers might encounter. (*Id.* at 23-24.) Her deposition also indicated that she was responsible for regulating dispatching. (*Id.* at 28.) Plaintiff helped coordinate sales functions and dispatching for J&F Steel. (*Id.* at 30, 128.)

Plaintiff had the responsibility to set a revised schedule to meet a customer's needs when that situation arose. (*Id.* at 33.) "Sometimes" she also coordinated with truck lines to find efficient ways of moving steel in and out of the plant. (*Id.* at 37-38.) In addition, while plaintiff did not have the authority to hire or fire individuals, she did have the ability to write corrective actions in certain circumstances. (*Id.* at 49, 82-83, 103-104.)

While plaintiff denies that she exercised discretion and independent judgment, it is clear from her deposition testimony that she did indeed exercise discretion and independent judgment in her work environment. Several duties, such as coordinating shipping and dealing with customer problems, clearly demonstrate plaintiff's use of discretion and independent judgment. While it is clear from her deposition that plaintiff had to consult with the plant manager in numerous instances, this does not necessarily remove her from the decision making process. *Piscione*, 171 F.3d at 537. Thus, since plaintiff exercised discretion and independent judgment, the second prong has been satisfied.

Under the third prong, the employee must have primary duties that involve office or non-manual work that is directly related to management policies or general business operations. An employee who may spend a significant portion of his time engaged in ministerial or routine tasks is not necessarily prevented from qualifying for the

9

administrative exemption. *Piscione*, 171 F.3d at 540, *citing York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir. 1991). As the regulations explain, the exemption:

> "is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole," but includes those whose work affects policy or whose responsibility it is to execute or carry it out ... [including] persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business."

29 C.F.R. § 541.205(c).

The regulations are also clear that:

> A determination of whether an employee has [administration] as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the [administrative] duties is a useful guide in determining whether [administration] is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in [administration] would have [administration] as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in [administrative] duties, he might nevertheless have [administration] as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the [administrative] duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor."

29 C.F.R. § 541.103.

In *Haywood v. North American Van Lines, Inc.*, the Court of Appeals for the Seventh Circuit held that an employee who directly related to client's needs and addressed their billing and delivery concerns was an exempt employee under the FLSA. *Haywood*, 121 F.3d at 1072. The *Haywood* Court also noted that "servicing" a business was part of the "administrative" process. *Id.*

In *Shaw v. Prentice Hall Computer Publishing*, the Court of Appeals for the Seventh Circuit held that an employee who edited books was an exempt employee under the FLSA because she set intermediate schedules and was ultimately responsible the editing process, despite the fact that she had to go through her superiors on many of these issues. *Shaw*, 151 F.3d at 643. The *Shaw* Court also noted that, "administrative employees work in an office communicating with the customers and doing paperwork." *Id.* at 644.

In the present case, it is clear from plaintiff's deposition that she primarily communicated with customers and did office work. Both parties agree that plaintiff performed office work or non-manual labor. (*D'Angelo Dep.*, at 32.) In addition, plaintiff stated that her responsibilities revolved around shipping. (*Id.* at 13.) Plaintiff dealt with these responsibilities "all day." (*Id.* at 24.) Plaintiff stated in her deposition that coordinating the dispatch function was the "core" of J&F Steel. (*Id.* at 27.) She described this process in her deposition as the "heart of the operation." (*Id.* at 35.) Plaintiff also stated that she "was the core of the apple. If I didn't get the steel out, they didn't get paid." (*Id.* at 116.) For a portion of her employment at J&F, plaintiff was

11

promoted to Quality Control Manager, even though she was still in training for this position when the plant closed. (*Id.*) Quality control is also a part of the "core" of J&F Steel Corporation. (*Id.* at 95.) The plaintiff's own deposition then makes it clear that her duties influenced J&F Steel's business operations and policies. Her primary responsibilities involved coordinating steel delivery, without which J&F Steel would have ceased to function. The "short test's" third prong is thus satisfied.

It is clear that plaintiff is an exempt administrative employee under the Fair Labor Standards Act. Plaintiff is not entitled to overtime wages and damages from defendant. Summary Judgment is thus appropriate for defendant J&F Steel Corporation.

Plaintiff has also raised the issue that Defendant did not plead its affirmative defense under the FLSA prior to its Motion for Summary Judgment. However, there is no ruling from the Seventh Circuit Court of Appeals that requires it to do so. In addition, it is clear that plaintiff was on notice of this defense through a letter to plaintiff's counsel prior to filing its Amended Answer to plaintiff's Complaint. Defendant is thus entitled to assert its affirmative defense.

Defendant has also raised the issues that it is a separate corporation from its Illinois fore bearer and that plaintiff's claim is partially barred by the statute of limitations. Because defendant is entitled to summary judgment on the merits of its affirmative defense, this Court declines to address those issues.

In addition, because the federal claims against defendant have been disposed, this Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to address the claims brought pursuant to the Illinois Minimum Wage Law, 82 ILCS 105/1 *et seq.*

## CONCLUSION

12

For the foregoing reasons, the Court grants defendant's motion for summary judgment. The Court hereby terminates this case. This is a final and appealable order.

SO ORDERED                    ENTERED: 4/11/03

*Ronald A. Guzman* (signature)

**HON. RONALD A. GUZMAN**
**United States Judge**